UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WATSON (B-41612), ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 06 C 1094 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| DONALD HULICK,[1] Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

This is a petition for a writ of habeas corpus filed by Michael Watson, who is presently in the custody of the Illinois Department of Corrections. The petition [#1, #6] is denied.

On March 31, 1993, a jury in the Circuit Court of LaSalle County, Illinois in case number 92-CF-277 convicted petitioner Michael Watson ("Watson") of first degree murder, aggravated criminal sexual assault, and aggravated kidnapping. For these three crimes he was sentenced to consecutive sentences of natural life, 50 years, and 15 years, respectively.[2]

---

[1] Donald Hulick has replaced Alan Uchtman as Warden of Menard Correctional Center where petitioner is incarcerated. Accordingly, Hulick is substituted as the proper party respondent. *See* Rule 2(a) of the Rules Governing § 2254 cases in the United States District Courts; Fed. R. Civ. P. 25(d)(1) (an order of substitution may be entered at any time).

[2] According to the state court record filed in this case, Dkt. No. 15, these charges arose out of the alleged abduction and killing of Caroline Jensen, a 19-year-old woman, on May 22, 1992. Watson did not know Jensen. He allegedly abducted her from a gas station, sexually assaulted her, and then stabbed her to death. Watson was only 18 years old at the time of the incident but already had a criminal history of violence towards women including a 1989 conviction for rape.

1

I. Procedural History

   A. Direct Appeal

Watson appealed his conviction to the Third District Appellate Court, raising three issues, two of which are relevant to this case:

   1. His confession should have been suppressed by the trial court because it was induced by police promises of psychiatric treatment; and
   2. The trial court erred in imposing consecutive sentences based on the incorrect assumption that consecutive sentences were mandatory under 730 Ill. Comp. Stat. 5/5-8-4(a).

The appellate court affirmed the trial court judgment in all respects on December 14, 1995. State Court Record, Dkt. No. 15, Ex. C. It found that Watson's confession was not involuntary and that the trial court correctly applied Illinois law in imposing consecutive sentences. *Id*. at 5, 8. Watson then filed a petition for leave to appeal in the Illinois Supreme Court, raising only the first of these issues. That petition was denied on April 3, 1996. State Court Record, Ex. E.

   B. First Petition for Post-Conviction Relief

Watson filed his first petition for post-conviction relief pursuant to the Illinois post-conviction relief statute, 725 Ill. Comp. Stat. 5/122 *et seq.,* on May 31, 1996. He raised the following relevant issues:

   1. His confession should have been suppressed because it was induced by police promises of psychiatric treatment instead of prison; and
   2. His trial counsel had a conflict of interest and ineffectively argued Watson's motion to suppress.

Watson's petition was originally summarily dismissed by the trial court but was eventually considered on its merits by the Third District Appellate Court. On December 30,

1999, that court rejected Watson's due process argument and found his ineffective assistance of trial counsel claim to be waived. State Court Record, Ex. M, at 3, 6. Watson filed a petition for leave to appeal to the Illinois Supreme Court, raising only the ineffective assistance of counsel claim. That was denied on April 5, 2000. State Court Record, Ex. O.

      C.      Second Petition for Post-Conviction Relief

On October 4, 2000, Watson filed a successive petition for post-conviction relief. He raised the following two points:

> 1. The imposition of his extended and consecutive sentences violated his 5th, 6th, and 14th Amendment rights because the trial court was allowed to impose an extended sentence based on facts that were not alleged in the indictment, found by the jury, or proven beyond a reasonable doubt; and
> 2. The imposition of consecutive sentences violated his right to due process because it was unauthorized under 730 Ill. Comp. Stat. 5/5-8-4(a).

The circuit court ruled that with regard to Watson's first point, *Apprendi* v. *New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), governed but was not retroactively applicable to his case. The court also rejected his second point. *See* State Court Record, Ex. P. On appeal, Watson raised the same two issues. The State Appellate Defender filed a motion to withdraw under *Pennsylvania* v. *Finley*, 481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987), which the Third District Appellate Court granted. *See* State Court Record, Ex. P. That court found that there were no arguable errors to be considered on appeal and to continue with the appeal would not possibly result in success and would be wholly frivolous. *Id*. at 2. Accordingly, the trial court's judgment was affirmed. *Id*. Watson's petition for leave to appeal to the Illinois Supreme Court was denied on September 29, 2005. State Court Record, Ex. R.

      D.      This Petition for a Writ of Habeas Corpus

3

On February 22, 2006, Watson timely filed this habeas petition, which the court will take as having been filed under 28 U.S.C. § 2254. He raises the following four claims:

1. "The petitioner was denied his 5th and 14th Amendment rights under the U.S. Constitution, when police obtained an involuntary confession from Watson by promising the petitioner psychiatric treatment in exchange for an admission of guilt;"
2. "The petitioner was denied his 6th Amendment right to the effective assistance of counsel where his attorney, Mr. James Brusatte, labored under a conflict of interest while representing Watson in the trial court. Specifically, the petitioner submits that Attorney James Brusatte's appointment to the LaSalle County State's Attorney's office on January 19, 1993, created a conflict of interest which served to deny Watson his 6th Amendment Right to the effective assistance of counsel;"
3. "[Several Illinois statutes under which Watson was sentenced] each violate the 5th, 6th, and 14th Amendments to the U.S. Constitution where they authorize enhanced sentences based on factual findings and do not require those facts to be alleged in an indictment, submitted to a jury, or to be proved beyond a reasonable doubt. The absence [in] the statutes of these Constitutional requirements renders each of these provisions unconstitutional as written, and thus, make Watson's natural life, 50 year and consecutive sentences each void;" and
4. "The petitioner was denied his 14th Amendment right to the due process of law when the trial court ordered Watson's 15 year sentence for aggravated kidnapping run consecutively pursuant to 730 [Ill. Comp. Stat.] 5/5-8-4(a); when that statutory provision prohibits a consecutive sentence on such a charge."

The Warden responded to Watson's petition on May 4, 2006, Dkt. No. 13, and Watson replied on January 25, 2007, Dkt. No. 23. The petition is now ripe for decision.

II.     Legal Standards

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court must deny petitioner's application for a writ of habeas corpus with respect to any claim decided on the merits by the state court unless the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

4

Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1); *Williams* v. *Taylor,* 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Id.* at 405. A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

In the post-AEDPA world, "state court adjudications on the merits of [a] petitioner's challenges are entitled to deference regardless of whether we classify them as questions of law, fact, or mixed...." *Ward* v. *Sternes*, 334 F.3d 696, 703 (7th Cir. 2003). A state court's application of Supreme Court precedent must be more than incorrect or erroneous; it must be "objectively" unreasonable. *See Lockyer* v. *Andrade*, 538 U.S. 63, 74, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway* v. *Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy* v. *Jaimet*, 332 F.3d 1081, 1089 (7th Cir. 2003) (reasonable state court decision must be at least minimally consistent with facts and

5

circumstances of case). Similarly, in evaluating whether the state court made an "unreasonable determination of the facts in light of the evidence," this court must be "objectively convinced that the record before the state court does not support the state court's findings in question," *Ben-Yisrayl* v. *Davis*, 431 F.3d 1043, 1048 (7th Cir. 2005), and can set that determination aside only on the basis of *unreasonable* error. *Ward*, 334 F.3d at 703.

Before reviewing the merits of the Illinois Appellate Court's decision, this court must determine whether petitioner fairly presented his federal claims to the Illinois courts because any claim not presented to the state's highest court is deemed procedurally defaulted. *See O'Sullivan* v. *Boerckel*, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Wilson* v. *Briley*, 243 F.3d 325, 327 (7th Cir. 2001). Also, procedural default occurs when the state court did not address the petitioner's federal claim because the petitioner failed to meet independent and adequate state procedural requirements. *See Stewart* v. *Smith,* 536 U.S. 856, 860, 122 S. Ct. 2578, 153 L. Ed. 2d 762 (2002). Under Illinois law, waiver is an independent and adequate state ground. *See Whitehead* v. *Cowan,* 263 F.3d 708, 726-27 (7th Cir. 2001). A federal court may not grant habeas relief on a procedurally defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice resulting therefrom or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman* v. *Thompson,* 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Anderson* v. *Cowan,* 227 F.3d 893, 899-90 (7th Cir. 2000).

A petitioner must present both the operative facts and controlling legal principles to the state court; mere reference to a constitutional issue is not enough. *See Chambers* v. *McCaughtry,* 264 F.3d 732, 737-38 (7th Cir. 2001). Factors relevant to whether a habeas petitioner has fairly presented a claim to the state courts include whether petitioner's state court

argument (1) relied on federal cases that engage in constitutional analysis; (2) relied on state cases that apply a constitutional analysis to similar facts; (3) asserted a claim in particular terms that call to mind a specific constitutional right; or (4) alleged a pattern of facts well within the mainstream of constitutional litigation. *See Wilson*, 243 F.3d at 327. Federal courts do not automatically conclude that a habeas petitioner has fairly presented his claim if he fulfills any one of these four factors. *See Molterno* v. *Nelson,* 114 F.3d 629, 634 (7th Cir. 1997). Instead, they must carefully consider the facts of each case. *See Bocian* v. *Godinez,* 101 F.3d 465, 469 (7th Cir. 1996).

III.    Discussion

    A.    Claim One

Watson argues that the Illinois Appellate Court made an unreasonable determination of fact in light of the evidence presented regarding the voluntariness of his confession. He contends that the "Third District Appellate Court of Illinois denied Watson's Fifth Amendment claim on direct review ... without ever discussing or considering the statements that the police made to Watson just prior to the petitioner making incriminating statements." Watson's Reply, at 4.

This court presumes that the facts found by the state courts are correct for purposes of collateral review. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Ward* v. *Sternes*, 334 F.3d 696, 703 (7th Cir. 2003). Thus, the court will adopt the facts as set forth by the appellate court on Watson's direct appeal, *People* v. *Watson*,

7

No. 3-93-0444 (Ill. App. Ct. 3rd Dist. Dec. 14, 1995), State Court Record, Dkt. No. 15, Ex. C, unless Watson has shown them to be incorrect.

The appellate court found that testimony admitted at the trial court's hearing on Watson's motion to suppress his confession established the following facts:

> [Watson, the defendant], then 18 years old, was arrested on July 19, 1992, on charges of aggravated battery and the unlawful restraint of Lindsay Burgh earlier that morning. Although counsel had just been appointed for defendant, investigating officers Randy Hanson and Michael Girton wished to speak with defendant before he talked to his attorney. After receiving *Miranda* warnings, defendant agreed to discuss the Burgh incident with the officers. Defendant claimed that he was a victim of misunderstandings in both the Burgh case and a prior rape for which he had been convicted in Alabama.
>
> Hanson informed defendant that Burgh's version of the incident had been substantially different from defendant's. After relating what Burgh had reported and expressing his disbelief of defendant's story, Hanson suggested that defendant had a monster inside him that was out of control with women. Hanson also told defendant that his uncle in Alabama had told the police that defendant needed psychiatric help, not jail. Hanson told defendant that he needed help before he killed someone, but he was going to have to ask for it himself. At that point, defendant admitted his culpability in the assault on Burgh.
>
> When defendant completed his statement, Hanson confronted him with facts concerning the murder of Caroline Jensen. Defendant initially denied his involvement; but Hanson persisted, saying that he believed that defendant had killed in the past. Hanson divulged evidence, including a knife, that police had uncovered implicating defendant. Defendant put his head down, and Hanson placed his hand on defendant's shoulder. He told defendant it was time to get it over with and tell the truth. Defendant then confessed to the May 22, 1992 abduction, sexual assault, and murder of Jensen.
>
> Girton also testified at the hearing, corroborating Hanson's testimony. He insisted that no one mentioned getting psychiatric help for the defendant.
>
> Defendant testified that he took the officers' statements as an offer of psychiatric help. Otherwise, his testimony at the suppression hearing was consistent with that of Hanson and Girton.

State Court Record, Ex. C, at 1-3.

The appellate court's analysis was as follows:

> [T]he trial court ruled that, under the totality of the circumstances, defendant's confession to the crimes against Caroline Jensen was voluntarily given, without coercion or promises by the investigating officers. Defendant was given *Miranda* warnings prior to his confession. He agreed to waive his rights and talk with the investigators. Although only 18, defendant was no stranger to the criminal justice system, having been previously convicted of a rape in Alabama. The officers conducting the interrogation disclosed various facts obtained during their investigation of the crimes against Jensen, including a comment made by defendant's uncle that defendant needed psychiatric care. They exhorted defendant to unburden his conscience and begin to heal himself by telling the truth, but the officers *never specifically promised* to recommend a reduced sentence or a program of psychiatric treatment in exchange for defendant's statement. As such, it cannot be said that the officers' tactics constituted an inducement that could possibly have overcome defendant's will. Accordingly, we hold that the court did not err in denying defendant's motion to suppress his confession.

State Court Record, Ex. C, at 4-5 (emphasis added).

Watson first argues that the appellate court's determination that the police officers never made a promise of leniency was unreasonable because the court did not consider some of the statements that the police officers made to him. He believes that the court did not consider the statements that the officers made to him in conjunction with quoting his uncle's comment that Watson needed psychiatric help instead of prison. In particular, he contends that the appellate court did not consider the officers' statement that for Watson to get help, the first step was to confess to his crimes. Watson goes on to argue that if the court had considered that statement in combination with the quote from his uncle, that the court would have understood that the effect was to make a promise of leniency in exchange for a confession. It appears, however, that the appellate court *did* consider other statements that the officers made to Watson, including that "Hanson told defendant that he needed help before he killed someone, but he was going to have to ask for it himself." Ultimately, Watson has cited no statements (and has not suggested that

9

any exist in the record) inconsistent with the appellate court's conclusion that the officers did not specifically promise leniency in exchange for a confession.

Watson also argues that the message that he received from the officers' statements was that they were offering him psychiatric help instead of jail time if he confessed. For example, he says Hanson "gave Watson the clear message that [Watson] had a problem with violence towards women, that he needed psychiatric help rather than prison, and that the first step to getting that help was to confess to the police." Watson's Reply, at 4. Also, "[t]he message that Watson got was very clear; the Police were trying to get him what he needed, that is, psychiatric help. There can be no doubt that the Officer's statements to Watson served as a promise of specific benefits to be gained by Watson if he confessed." Watson's Reply, at 4. The Seventh Circuit has clearly held, however, that "a defendant's mistaken belief about the scope of a police officer's promise does not render his confession involuntary." *Lord* v. *Duckworth*, 29 F.3d 1216, 1222 (7th Cir. 1994) (affirming the district court's denial of a writ of habeas corpus despite the petitioner's argument that he was under the impression that the police were offering him leniency in exchange for a confession); *see also United States* v. *Long*, 852 F.2d 975, 978 (7th Cir. 1988).

Furthermore, making findings of fact regarding whether or not officers made promises of leniency is squarely within the purview of trial courts. *See United States ex rel. Chillers* v. *Wellborn*, 1994 WL 53761, at *4 (N.D. Ill. Feb. 18, 1994) ("[T]he [state] trial court judge made a factual determination based upon the evidence at the suppression hearing and the credibility of the witnesses at that hearing, that no promises of leniency were made to Chillers. As stated above, that explicit fact-finding is presumed to be correct on habeas review."); *see also United*

*States* v. *Cotts*, 1992 WL 209535, at *6 (N.D. Ill. Aug. 20, 1992) (denying the defendant's motion to suppress where the record did not support his contention that officers had promised leniency); *United States* v. *Bailin*, 736 F. Supp. 1479, 1487 (N.D. Ill. 1990) (same). Because Watson has failed to suggest any "clear and convincing" evidence that the state courts' determinations on this issue were unreasonable, this court is bound to presume that those determinations were correct. *Hinton* v. *Uchtman*, 395 F.3d 810, 819 (7th Cir. 2005); *Connor* v. *McBride*, 375 F.3d 643, 649-50 (7th Cir. 2004).

Watson also briefly argues that the state courts unreasonably applied federal law to the facts in determining whether his confession was voluntary. He says,

> Specifically, in viewing the circumstances surrounding the statement, the Appellate Court makes no mention of the fact that the Police were deliberately violating Watson's Sixth Amendment rights in another case in that very interrogation. Just minutes earlier, counsel had been appointed for the petitioner in that other case, yet the police rushed to the jail to question Watson before he had the chance to consult with his attorney; a tactic which resulted in a suppression order in that other case.

Watson's Reply, at 5-6.

Again, however, the appellate court clearly was aware of these facts and even recounted them in the introduction to its opinion: "Although counsel had just been appointed for defendant, investigating officers Randy Hanson and Michael Girton wished to speak to defendant before he talked to his attorney. After receiving *Miranda* warnings, defendant agreed to discuss the Burgh incident with the officers.... At the conclusion of the [suppression] hearing, the court suppressed defendant's statement with respect to the [Lindsay] Burgh charges." State Court Record, Ex. C, at 2-3.

The appellate court applied the correct test for determining whether Watson's statement

11

was voluntary: the totality of the circumstances test. *United States ex rel. Malone* v. *Uchtman*, 445 F. Supp. 2d 977, 988 (N.D. Ill. 2006) (citing *Bridges* v. *Chambers*, 447 F.3d 994, 997 (7th Cir. 2006)). It considered Watson's age, his familiarity with the criminal justice system, the fact that he had been given his *Miranda* warnings, and that no coercion had been applied or promises of leniency made. These were proper and common factors for the court to consider. *See id.*; *Connor*, 375 F.3d at 651 (citing *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)). Therefore, when it ruled that the trial court had correctly concluded that Watson's will was not overcome by the officers and his confession was voluntarily made, the appellate court was well within the bounds of reason.[3]

B.   Claim Two

Watson claims that he was denied the effective assistance of counsel because his first attorney, James Brusatte, left his employment to take a job with the State's Attorney, thereby evidencing a conflict of interest. He initially raised this claim in his first petition for post-conviction relief. The Third District Appellate Court found that it was waived because it could have been but was not raised on direct appeal. State Court Record, Ex. M, at 3-4. The court therefore declined to consider Watson's claim on the merits. *Id*. A state court's determination that a claim has been forfeited for not raising it on direct appeal is sufficient to bar federal habeas review. *Martin* v. *Evans*, 384 F.3d 848, 855 (7th Cir. 2004). Watson does not suggest any cause

---

[3] The appellate court considered the fact that Watson had been given his *Miranda* warnings prior to making any inculpatory statements. These warnings necessarily included an admonition to Watson that he had the right to have an attorney and to have that attorney present during questioning. *Miranda* v. *Arizona*, 384 U.S. 436, 471, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). While the record provided to the court does not include transcripts from the trial court's suppression hearing, and it is not clear from the briefs and opinions provided whether Watson explicitly waived his right to an attorney, that issue was not raised by Watson in direct review, post-conviction review, or in his briefs to this court. Even if he did not make an explicit waiver, that issue would by now be procedurally defaulted.

for his procedural default and merely argues that the appellate court did consider his claim on the merits. This court has carefully reviewed that decision, however, and finds that the appellate court did not consider Watson's claim of ineffective assistance of trial counsel on the merits. Therefore, that claim is procedurally defaulted and cannot be considered on its merits here.

### C. Claim Three

Watson next argues that several Illinois statutes[4] violate the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution where they authorize enhanced sentences based on factual findings and do not require those facts to be alleged in an indictment, submitted to a jury, or to be proved beyond a reasonable doubt. Therefore, he says, their application to his case violated his rights as found by the United States Supreme Court in *Apprendi* v. *New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Apprendi* did indeed hold that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Julian* v. *Bartley*, 495 F.3d 487, 496 (7th Cir. 2007) (citing *Apprendi*, 530 U.S. at 490). As Watson recognizes, however, the Seventh Circuit has held that *Apprendi* does not apply retroactively to disturb sentences that became final before *Apprendi*'s effective date in 2000. *See, e.g., Curtis* v. *United States*, 294 F.3d 841, 846 (7th Cir. 2002). Although Watson suggests that this court overturn the Seventh Circuit's decisions, this court does not have the power to do that.

---

[4] The statutes Watson cites are the Natural Life Extended Term Statute, 730 Ill. Comp. Stat. 5/5-8-1(a)(1)(B), the Extended Term Statute, 730 Ill. Comp. Stat. 5/5-8-2, and the Consecutive Sentencing Statute, 730 Ill. Comp. Stat. 5/5-8-4(a).

D.   Claim Four

Watson's final claim is that he was denied his federal constitutional right to due process of law when the state trial court incorrectly applied 730 Ill. Comp. Stat. 5/5-8-4(a)[5] to make his 15-year sentence run consecutively to his other two sentences. Watson raised this claim on direct appeal. Although the Third Appellate District said that he had waived it by not raising it in the trial court, that court deemed it sufficiently significant to consider on its merits anyway. It found that the trial court had correctly applied the statute and therefore rejected Watson's argument.

This claim is not cognizable on federal habeas review. Habeas relief is only available to a person in custody in violation of the United States Constitution or laws or treaties of the United States, *see* 28 U.S.C. § 2254(a), and is unavailable to remedy errors of state law. *Estelle* v. *McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, an alleged error in the application of an Illinois statute does not present a cognizable claim for federal habeas review. *See, e.g. Dellinger* v. *Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). Watson's use of the phrase "due process" is insufficient to convert this state law claim into one of federal constitutional law.

---

[5] The 1993 version of this statute stated as follows:

> The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12-13 or 12-14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively.

730 Ill. Comp. Stat. 5/5-8-4(a) (West 1993).

IV.     Conclusion and Order

For all of the reasons stated above, the court concludes that Watson is not entitled to a writ of habeas corpus. His petition [#1, #6] is therefore denied. To the extent that Watson seeks a certificate of appealability, that too is denied, because reasonable jurists could not debate whether this habeas petition should have been resolved in a different manner and the issues raised do not deserve encouragement to proceed further. *U.S. ex rel. Burress* v. *Weger*, 2006 WL 3409160, at *1 (N.D. Ill. Nov. 21, 2006) (citing 28 U.S.C. § 2253(c); *Slack* v. *McDonnell*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot* v. *Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983))).

Dated: September 28, 2007                   ENTER: _____
                                            JOAN HUMPHREY LEFKOW
                                            United States District Judge